NEWBY (TALLAHASSEE v.). See Case No. 13,737.

## Case No. 10,146.

### The NEW CHAMPION.

[1 Abb. Adm. 202.] [1]

District Court. S. D. New York. April, 1848.

COLLISION—BETWEEN STEAM AND SAIL—DUTY OF SAILING VESSEL.

1. A sailing vessel is bound, when navigating in proximity to a steamboat, to take all reasonable precautions to protect herself, and to avoid injury to the steamboat, and she is not entitled to impose upon the steamer the duty to guarantee her against a collision.

[Cited in The Nacoochee, 22 Fed. 859.]

2. If injured by collision with a steamboat, the sailing vessel must discharge herself from fault, and show the adverse vessel guilty of culpable neglect, or want of due equipment or skill, which led to the collision.

This was a libel in rem, by John Hurley and William Murray, owners of the sloop Mary, against the steamboat New Champion, to recover damages for a collision.

The facts out of which the action arose were as follows: The steamboat arriving from Hartford in the night time, made her turn on the Brooklyn side of the East river, and was passing across the river to her berth at a wharf in New York. The sloop was at the same time running up with a free wind from the southwest, being close in upon the New York side. Those engaged in navigating her saw the lights of the steamer, and knew that she was on her turn towards the slip, and also what berth she was intending to take. At the time the steamer starboarded her helm and had commenced coming around, the river was clear in her proper course and direction to her berth. The sloop ran up across the line of the track she was turning into, unperceived on board the steamer, until the two vessels were nearly in collision. A quick order to luff was then given to the sloop by the master of the steamer, but it was not complied with in time, and the collision occurred. The pilot and master of the steamer testified upon the hearing, that at the time when the order to luff was given, the sloop could easily have been luffed enough to avoid the steamer; and their testimony was corroborated by proof of declarations subsequently made by the pilot of the sloop, to the effect that he gave the order to his helmsman to luff, but that the order was not obeyed. It was also proved that a good lookout was stationed and kept at the proper post on board the steamer; that her lights were exhibited conspicuously and shining brightly, and that strict precautions were employed on the steamer to avoid collision with other vessels whilst so gaining her berth; that she was coming into her usual and well-known place of landing, and that she pursued the customary method of doing it, as was notorious to vessels navigating the rivers near the docks in this port. It was furthermore proved that the sloop had sufficient time to have luffed and avoided the steamer, had she adopted that manoeuvre when the necessity of it was discovered by her.

George White, for libellants.

(1) The question to be considered is not whether the New Champion has been guilty of extraordinary neglect; but, did she, on the occasion on which this collision occurred, observe due care and exercise the proper precaution?

(2) Public safety requires that steamboats, particularly when navigating our crowded waters, should observe extraordinary care and unremitting vigilance. The smaller craft are comparatively helpless, but the steamboat possesses and exercises a power to which the winds and the tides are obedient. Her own momentum is unresistingly subject to her control; she is independent of external resistance; and in all cases, it may be positively asserted, wherever the smaller vessel is seen, a steamboat, unless her machinery is out of order, can avoid her.

(3) The New Champion did not observe ordinary care; no due precaution was taken to avert the collision, although she saw the sloop in ample time to avoid her. Nothing was done on board the New Champion but to hail the people on board the sloop, ordering her to luff. The testimony of the claimants' own witnesses shows this.

(4) The sloop Mary was comparatively helpless; while the New Champion had the full sweep of the river and the entire command of her machinery. The facts, uncontroverted and uncontradicted, are, that the sloop Mary, a very small vessel, was pursuing her course up the East river, near the New York side, to avoid a strong ebb tide; while the New Champion, a steamboat of a very large class, was crossing over from the Brooklyn side, the sloop and the New Champion came in collision with each other; that the New Champion saw the sloop when she was about one third or one half of a mile from her, and saw her distinctly, although the sloop had no lights.

Now, from the mere statement of these facts, the necessary conclusion must be, that the large and strong New Champion, with a propelling power to which the winds and tides are as implicitely obedient as is her own momentum, could, with a suitable effort, which she was bound to make, have avoided a collision with this little vessel, unless by some positive mismanagement the sloop placed herself in the way of the New Champion, so as to baffle any attempts of the latter to avoid her. Then, did the sloop place

[Reported by Abbott Brothers.]

herself in the way, unnecessarily, of the New Champion? So far from this being the case, she did every thing she could to avoid the steamboat. She was hemmed in while the steamboat had the full sweep of the river. Claimants' witnesses, indeed, state, that if the helm of the sloop had been put down, she could have avoided the New Champion. This was the very thing that was done; in short, they made every effort on board the sloop, while they on board the New Champion did nothing; whereas, if the sloop had made no effort, no blame could have been attached to her.

BETTS, District Judge. There is evidently a wide-spread misapprehension as to the relative liabilities and privileges of steamboats and sailing vessels, in cases of collision between them. In actions prosecuted against steamers, this court has repeatedly upheld the rule to be, that sailing vessels are bound to exculpate themselves from blame, and employ all reasonable precaution for their own protection, as well as to avoid injury to steamboats; and that they are in no way entitled to hold their own positions and courses under all circumstances, and rely upon steamers for a full guarantee when navigating in proximity to them. Tyler v. The South America [Case No. 14,311].

In the case of The William Young [Case No. 17,760], a collision occurred between a sloop and a steam vessel, running in opposite directions upon the North river, in consequence of an abrupt variation of the sloop's course. The court declared that it was not to be assumed that the fault was with the steamer; but the burden of proof was upon the libellant to show her in the wrong; that although a higher degree of responsibility was cast upon steamers, yet a sailing vessel could not be justified in an improper movement on her part, because of an apprehension of encountering an approaching steamer, unless the latter was crowding so much upon her track as to create an imminent danger of collision.

In the case of The New Jersey [Case No. 10,161], it was held that the laws of navigation imposed no peculiar general duties or liabilities on steamboats, in relation to collisions with sailing vessels; but the sailing vessel is bound to use, with reasonable promptitude and skill, all the means in her power to avoid a threatened collision; that it was only because the means at command by steam vessels are so much more efficacious and ready than those possessed by sailing vessels, and because the consequences of an omission to apply such means are so immediately destructive, that vessels propelled by steam are required to use the more watchful precautions; and the rule was there maintained, that the vessel under canvas must contribute to the common security so far as within her power; and that the owners of steamboats were by no means to be made insurers against the negligence, ignorance, or misconduct of persons in charge of sailing vessels.

In the case of The Neptune [Case No. 10,120], the declaration was reiterated, that steam vessels are not burdened with the sole risks and responsibilities of encounters with sailing vessels. It was stated that the rule is reciprocal, and places both classes of vessels under a common liability and privilege; that a sailing vessel under way was bound to exculpate herself from all negligence or misconduct leading to a collision, before she could claim damages against a steamboat for injuries received from her; and it is believed this is the spirit and policy of the marine law.

In each of these cases the proof was, that the collision was occasioned by an improper change of her course, on the part of the sailing vessel, unexpectedly to the steamer, bringing the former suddenly in the track of the latter. There is, however, no doctrine of the law which limits the duty and liability of the sailing vessel to cases of that description alone. It does not rest upon any specific kind of blame occurring in her management; but the general principles of law governing the navigation of vessels nearing each other have their full effect over her, with the exception that she has the privilege to hold her own course, unless it be palpable that she will endanger a collision with the steamer by so doing. Those principles are, that every vessel, however propelled, is bound to exert herself to avoid injury to others in the vicinity of which she is moving, and can found no claim to damages resulting solely from her own culpable want of care, or which are caused by her misconduct. To be entitled even to a contribution to her loss by collision, it must be made to appear there was at least a concurrent fault in the conduct of the other vessel, conducing to produce the collision. The qualification to these obligations is no more than that a steamer is not entitled, as against a vessel under sail, to keep a particular course, but must leave the latter to hold her own when it can be done with safety.

The libellant in this case must prove the steamer was in fault, and must show that his vessel was managed in a prudent and skilful manner, and interposed no needless impediments in the way of the steamer, and was not herself the cause of her own misfortune. Smith v. Condray, 1 How. [42 U. S.] 28; Waring v. Clark, 5 How. [46 U. S.] 501; The Ligo, 2 Hagg. Adm. 356; The Alexander Wise, 2 W. Rob. Adm. 66; The Woodrop-Sims, 2 Dod. 83.

The sloop, on the occasion, was running close in under the shadows of the city, in a dark night, without showing any lights, and took a course crossing the track of the steamer, at so small a distance that it must be palpable to her that if she were not seen from the steamer and avoided by her, a col-

lision would be extremely probable. She approached the steamer at the time the latter, as her lights would indicate, was working round to get into her slip. When a steamer is in the act of coming about, she cannot command her movements so promptly as under direct headway, and thus the reason for holding her to an extraordinary responsibility is, for the time being, in a measure suspended, as well as the privilege of a sailing vessel in respect to her own course, and this would be so especially in this instance, as the sloop was violating the duty imposed by law upon vessels in port, of showing lights in the night to steamboats coming in, &c. Her master must have been conscious that in so doing, the steamer was exposed to the hazard of coming upon her without warning of her position. 2 W. Rob. Adm. 1, 347. I think, upon the evidence, the collision was caused by the inattention and mismanagement of those on board the sloop, and not from any fault on the part of the steamer. The sloop was before the wind, running against a strong ebb tide; and the evidence is clear, that she might, with the greatest facility, have avoided the steamer, had she ported her helm, and that she had sufficient warning that she was in a situation where the steamer must inevitably come in conflict with her. She, however, needlessly and rashly passed into the narrow passage between the wharves and steamer, and thus placed herself within the range the Champion must take in swinging around to her berth. This was a gross act of remissness on the part of the sloop, and she has no right to charge the steamer with the consequences of it.

Libel dismissed with costs.

